**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>     Plaintiff,<br><br>v.<br><br>David Lee Frater,<br><br>     Defendant. | No. CR-14-01517-PHX-DGC<br><br>**ORDER** |

  On October 20, 2015, Defendant David Lee Frater was indicted on three child pornography charges, including one count of pandering child pornography in violation of 18 U.S.C. § 2252A(a)(3)(B), one count of distributing child pornography in violation of § 2252A(a)(2)(A), and one count of possessing child pornography in violation of § 2252A(a)(5)(B).[1]  Doc. 66.  On January 5, 2016, the Court accepted Mr. Frater's guilty plea to the possession charge under a plea agreement in which the government agreed not to prosecute him on any of the other charges in the indictment.  Docs. 75, 91.

  On February 16, 2016, Mr. Frater sent the Court a letter requesting to withdraw his guilty plea.  Doc. 95.  Two days later, Mr. Frater's attorney, Ashley D. Adams, filed a motion to withdraw from the case at Mr. Frater's urging.  Doc. 97.  The Court held a hearing on both motions on February 24, 2016.  For the reasons that follow, the Court will deny both motions and proceed with sentencing on April 4, 2016.

---

[1] Defendant was also indicted under A.R.S. 13-3821 for failing to register with the Arizona Department of Public Safety Sex Offender Registry.

**I.     Motion to Withdraw Guilty Plea.**

After the court accepts a guilty plea and before it imposes a sentence, a defendant may withdraw the plea if he shows a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003). The "fair and just reason" standard is applied liberally, but the defendant bears the burden of showing that the standard is satisfied. *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* (citations omitted). "Erroneous or inadequate legal advice may . . . constitute a fair and just reason for plea withdrawal." *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011) (citation omitted).

In his letter to the Court, Mr. Frater lists four reasons why he believes he should be permitted to withdraw his plea: (1) at the time he entered the plea agreement, he was under the false impression that § 2252A(a)(3)(B) (the provision underlying the pandering charge) was constitutional, whereas he now believes it to be unconstitutional under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002); (2) at the time he entered the plea agreement, he was under the false impression that a digital file could be an "image" within the meaning of § 2252A(a)(5)(B) (the provision underlying the possession charge), whereas he now believes otherwise; (3) at the time he entered the plea agreement, he was not aware of the Supreme Court's decision in *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011), which he now believes supports a First Amendment argument against § 2252A(a)(5)(B); and (4) he entered the plea agreement without receiving all of the discovery to which he believes he was entitled. Doc. 95. At the February 24, 2016 hearing, Mr. Frater clarified his discovery objection: he believes the FBI has not adequately explained how it obtained his IP address, and that it could not have done so without breaking the law. He stated one additional reason: he believes that

an FBI agent in Denver lied about having a conversation with him.

The Court concludes that Mr. Frater has not established a fair and just reason for withdrawing his guilty plea. Mr. Frater's first three reasons rest on a misunderstanding of the law, while his remaining reasons rest on factual issues that Mr. Frater was aware of when he entered the plea agreement.

With regard to Mr. Frater's first reason, there is no merit to his argument that the pandering provision is unconstitutional. As the Court has previously explained to Mr. Frater, the Supreme Court has rejected the exact arguments he seeks to make. In *United States v. Williams*, 554 U.S. 285 (2008), the Supreme Court held that the pandering provision is consistent with the First Amendment because "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection." *Id.* at 297. The Court also held that the provision was consistent with the Due Process Clause's prohibition on vague criminal statutes. The Supreme Court explained that the pandering provision requires the government to show that the defendant believed he was distributing child pornography or that he intended to cause others to so believe. *Id.* at 306. No vagueness problem exists because "[w]hether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment." *Id.* The Court discussed *Free Speech Coalition*, the case relied on by Mr. Frater, and found it distinguishable. *Id*. at 303. The decision in *Williams*, which was rendered after *Free Speech Coalition*, controls. *Utah-Nevada Co. v. De Lamar*, 133 F. 113, 120 (9th Cir. 1904) ("later decisions [of the Supreme Court] must govern and control our action.").

With regard to Mr. Frater's second reason, there is no merit to his argument that a digital file cannot constitute an "image" under § 2252A(a)(5)(B). That provision makes it a crime to "knowingly possesses, or knowingly accesses with intent to view, any . . . computer disk, or any other material that contains an image of child pornography" if the material has been transmitted in interstate commerce. The term "[c]hild pornography" is defined, in pertinent part, as "any visual depiction, including any . . . computer or computer-generated image or picture . . . of sexually explicit conduct" involving minors.

1 § 2256A(8). "Visual depiction" is defined to include "data stored on computer disk or by
2 electronic means which is capable of conversion into a visual image." 18 U.S.C.
3 § 2256(5). Given this statutory language, the Court cannot accept Mr. Frater's suggestion
4 that the child pornography statutes apply only if there is an actual image – such as a
5 photograph – physically residing within a computer box, rather than numeric values
6 stored in the computer's memory that can be translated by the computer into images
7 displayed on a computer screen. Congress knows how computers work, and its express
8 references to images on a "computer disk," "computer-generated image[s]," and "data
9 stored on computer disk or by electronic means which is capable of conversion into a
10 visual image," clearly show that Congress intended the child pornography statutes to
11 reach digital images like those at issue in this case. Mr. Frater's argument to the contrary
12 is wholly unpersuasive.

13 Moreover, this issue is not new. Mr. Frater asserted this argument before he
14 entered his guilty plea. He raised it in a handwritten letter to the Court (Doc. 54) and it
15 was discussed in some detail at a hearing on October 20, 2015 (Doc. 69). The Court
16 agreed to have the issue briefed by the parties (Doc. 69), but Defendant entered a plea
17 agreement before it was briefed (Docs. 72, 73).

18 With regard to Mr. Frater's third reason, the *Brown* case does not help him.
19 *Brown* found that state regulation of violent video games ran afoul of the First
20 Amendment. 131 S. Ct. 2729. But nothing in *Brown* changed the Supreme Court's
21 holding that "a statute which proscribes the distribution of all child pornography, even
22 material that does not qualify as obscenity, does not on its face violate the First
23 Amendment." *Williams*, 533 U.S. at 288. Indeed, one of the opinions in *Brown*
24 specifically distinguished depictions of violence from child pornography, nothing that
25 child pornography "automatically fall[s] outside the First Amendment's protective
26 scope." *Brown*, 131 S. Ct. at 2762-63 (opinion of Breyer, J., dissenting). And in a
27 decision delivered three years after *Brown*, the Supreme Court reaffirmed that child
28 pornography is beyond the scope of First Amendment protection. *See United States v.*

*Alvarez*, 132 S. Ct. 2537, 2544 (2012) (citing *New York v. Ferber*, 458 U.S. 747 (1982)).

Thus, the Court concludes that Mr. Frater's legal arguments do not constitute a fair and just reason for allowing him to withdraw his guilty plea. His arguments are clearly incorrect and he has not shown that he has received defective legal advice. To the contrary, Ms. Adams appears to have given him very accurate legal advice. *See* Doc. 97.

As already noted, a fair and just reason may include "newly discovered evidence" or any other reason "that did not exist when the defendant entered his plea." *Ortega-Ascanio*, 376 F.3d at 883. Although Mr. Frater originally asserted in his letter to the Court that he was denied discovery he should have received (Doc. 95 at 12), he and his counsel clarified during the hearing on February 24 that he was in fact provided all discovery by the government. That discovery includes a 233-page disclosure filed with the Court after the hearing. Doc. 102. The disclosure includes a description of how law enforcement located Mr. Frater's IP address and later tracked it to his home, where a search warrant was executed. In addition to this document, Mr. Frater's computer expert talked with the FBI and reviewed evidence at the FBI's office regarding the investigation of Mr. Frater, including how his IP address was located. Counsel confirmed at the February 24 hearing that the written discovery and the expert's findings were conveyed to Mr. Frater, and discussed with him, before his change of plea.

Mr. Frater asserted at the hearing that he used the Tor network for his computer communications, and that the Tor network made it impossible for the FBI to track his IP address without breaking the law. This is not new information. Mr. Frater said during the hearing that he has used Tor "for years and years" and is a "contributing member to the website." Court's LiveNote Transcript, 2/24/16. He said he used Tor because law enforcement "cannot crack it." *Id.* Other cases have addressed use of the Tor network to conceal IP addresses. Indeed, as recently as last week a court held that users of the Tor network have no reasonable expectation of privacy in their IP addresses:

> In the instant case, it is the Court's understanding that in order for a prospective user to use the Tor network they must disclose information,

>    including their IP addresses, to unknown individuals running Tor nodes, so that their communications can be directed toward their destinations. Under such a system, an individual would necessarily be disclosing his identifying information to complete strangers. Again, according to the parties' submissions, such a submission is made despite the understanding communicated by the Tor Project that the Tor network has vulnerabilities and that users might not remain anonymous. Under these circumstances Tor users clearly lack a reasonable expectation of privacy in their IP addresses while using the Tor network. In other words, they are taking a significant gamble on any real expectation of privacy under these circumstances.

*United States v. Farrell*, No. CR15-029RAJ, 2016 WL 705197, at *2 (W.D. Wash. Feb. 23, 2016). The Court notes that many child pornography cases have been brought against persons who used the Tor network. *See*, *e.g.*, *United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 WL 337263 (W.D. Wash. Jan. 28, 2016); *United States v. Cottom*, No. 8:13CR108, 2015 WL 9308226 (D. Neb. Dec. 22, 2015); *United States v. Reibert*, No. 8:13CR107, 2015 WL 366716 (D. Neb. Jan. 27, 2015).

The relevant point, however, is not the holdings of these cases. The relevant point is that Mr. Frater has known for months how the FBI claimed to have found his IP address, how the Tor network functions, and that he believed the network to be invulnerable. He knew about this issue well before he elected to enter into a plea agreement in this case. He discussed it with his counsel and expert. And although they did not agree with his view of the merits of this issue, Mr. Frater has shown no hesitancy to share his views directly with the Court. *See* Docs. 54, 87, 95, 98. His second thoughts on this issue do not provide a fair and just reason for withdrawing his guilty plea.

Mr. Frater also asserted at the February 24 hearing that he believes an FBI agent in Denver lied about having had a conversation with him. But that alleged conversation was disclosed months ago in the government's discovery, before Mr. Frater changed his plea. Mr. Frater stated during the hearing that he learned of the agent's assertion in connection superseding indictment, which the Court notes was filed on October 20, 2016. Doc. 66. Mr. Frater nonetheless proceeded with a change of plea on November 18, 2015. Doc. 74.

- 6 -

His counsel also noted that a conversation with Mr. Frater was not necessary to access his child pornography materials because he had posted them on the Gigatribe website and had provided his password on line, as disclosed in the government's original discovery.

The Court finds that Mr. Frater's factual arguments do not constitute fair and just reasons for allowing him to withdraw his guilty plea. Mr. Frater made an informed decision, based on the advice of counsel and with all of the relevant evidence before him, to enter a guilty plea. The Court accepted the plea. Doc. 91. Mr. Frater has not shown a fair and just reason to change course now.[2]

**II.     Ms. Adams' Motion to Withdraw.**

Ms. Adams has filed a motion to withdraw as Mr. Frater's attorney because "Mr. Frater has stated very explicitly that he is not satisfied" with her representation. Doc. 94 at 4-5. Because the Court finds that this motion is not supported by good cause, it will deny the motion.

On March 23, 2015, the Court allowed Mr. Frater's prior counsel to withdraw after Mr. Frater expressed dissatisfaction with that lawyer's representation. The Court warned Mr. Frater, on the record, that it would be unlikely to appoint a third lawyer if he was unable to make his relationship with Ms. Adams work. The Court explained that in its experience, in cases where the attorney-client relationship breaks down more than once, the problem is usually with the client, not the lawyers.

The Court concludes that Ms. Adams has been very diligent in representing Mr. Frater. She is conversant with the factual record, has done correct legal analysis (*see* Doc. 97 at 2-4), has retained experts to assist in the defense, and has negotiated a very

---

[2] Although it is not relevant to the question of whether Mr. Frater has provided fair and just reasons, the Court notes, as did his counsel at the hearing, that the plea agreement is very favorable to Mr. Frater. He was permitted to plead guilty to Count 3, which charges possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). Doc. 75. The plea agreement caps his sentence at the high end of the guideline range (*id*.), which the presentence report calculates at 168 months, or 14 years (Doc. 95 at 14). The government stated at the February 24 hearing that it will not enter into another plea agreement if Mr. Frater withdraws from the current agreement, and conviction under the superseding indictment on Count 1 alone would result in a sentencing range of 15 to 40 years given Mr. Frater's prior child pornography conviction. *See* Doc. 66 (superseding indictment); 18 U.S.C. § 2252A(a)(3)(B), (b)(1).

favorable plea agreement.  After observing the interaction between Ms. Adams and Mr. Frater during several hearings, including the most recent hearing on February 24, the Court concludes that the attorney-client relationship is not irretrievably broken. Mr. Frater is a challenging client to be sure.  He is intelligent and determined, and has strong views about the facts and the law.  The Court concludes that Ms. Adams has not only represented him well, but also has the patience and determination to continue working with him constructively.  She is also the attorney most familiar with the plea agreement and the history of this case.  Appointing new counsel would result in months of delay in the sentencing, and new counsel would not represent Mr. Frater more effectively than Ms. Adams and might well have more difficulty communicating with him.

The Court will not appoint Mr. Frater a third attorney.  He may be unhappy with the advice Ms. Adams has given him, but the Court is convinced that the advice is sound. A criminal defense attorney's job is not to tell her client what he wants to hear; it is to defend her client's interests vigorously.  Ms. Adams has done so here.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 2/16/2016.

**IT IS ORDERED:**

1. Mr. Frater's request to withdraw his guilty plea (Doc. 95) is **denied.**
2. Ms. Adams' motion to withdraw as counsel (Doc. 97) is **denied.**
3. Sentencing will proceed on **April 4, 2016, at 3:30 p.m.**

Dated this 29th day of February, 2016.

_____
David G. Campbell
United States District Judge